## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CORPORATE SYNERGIES GROUP, LLC, | |
| *Plaintiff,* | Civil Action No. 18-13381 |
| v. | **OPINION & ORDER** |
| GREGORY ANDREWS, SIMONE UR, GERARD DUFFY, BARBARA DIGGS and ALLIANT INSURANCE SERVICES, INC., | |
| *Defendants.* | |

This matter involves the alleged breach of non-solicitation and confidentiality agreements. Presently before the Court are the following two motions filed Defendants: (1) Defendants Gregory Andrews, Gerard Duffy and Barbara Diggs' motion to dismiss Counts One and Seven of Plaintiff's Amended Verified Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 56); and (2) Defendants Simone Ur and Alliant Insurance Services, Inc.'s ("Alliant") motion for judgment on the pleadings for Counts One and Seven of Plaintiff's Amended Verified Complaint (D.E. 59). Plaintiff filed a single brief opposing both motions (D.E. 73), to which Defendants filed two reply briefs (D.E. 74, 75).[1]  For the reasons that follow, both of Defendants' motions are **DENIED.**

---

[1] In this Opinion, the brief in support of the Rule 12(b)(6) motion (D.E. 56-1) will be referred to as "12(b)(6) Br."; the brief in support of the Rule 12(c) motion (D.E. 59-1) will be referred to as "12(c) Br."; Plaintiff's brief in opposition (D.E. 59) will be referred to as "Plf. Opp."; Defendants' reply brief in support of the Rule 12(c) motion (D.E. 74) will be referred to as "12(c) Reply"; and Defendants' reply brief in support of the Rule 12(b)(6) motion (D.E. 75) will be referred to as "12(b)(6) Reply."

# I.    FACTUAL[2] AND PROCEDURAL BACKGROUND

Plaintiff Corporate Synergies Group, LLC ("CSG") and Defendant Alliant are direct competitors in the insurance brokerage services field. Am. Verified Compl. (the "AVC"), D.E. 19. Defendants Gregory Andrews, Simone Ur, Gerard Duffy, and Barbara Diggs (the "Individual Defendants") were CSG employees who worked closely together. *Id.* ¶¶ 25, 27, 29, 32. CSG required that each of the Individual Defendants sign a Non-Solicitation and Confidentiality Agreement (the "Agreement") that contained confidentiality requirements as well as post-employment non-solicitation, non-disclosure, and non-disparagement provisions. *Id.* ¶ 55. During the summer of 2018, the Individual Defendants all voluntarily resigned from CSG and began working for Alliant. *Id.* ¶¶ 104, 139, 147, 152.

On August 30, 2018, Plaintiff filed a Verified Complaint and requested a temporary restraining order, preliminary injunction, and expedited discovery. Plaintiff sought to prevent Defendants from soliciting CSG's current clients and disclosing confidential CSG information. D.E 1. Following oral argument on September 4, 2018, the Court granted Plaintiff's application for a temporary restraining order as to Defendant Andrews regarding the solicitation of CSG's current and former clients. Plaintiff's application for a temporary restraining order was otherwise denied. In addition, the Court partially granted Plaintiff's request for expedited discovery. D.E. 14.

---

[2] The factual background is taken from Plaintiff's Amended Verified Complaint (the "AVC") and its exhibits. D.E. 19. When reviewing a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (discussing standard for Rule 12(b)(6) motion); *Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 721 F. Supp. 2d 307, 314 (D.N.J. 2010) (discussing standard for Rule 12(c) motion).

On September 26, 2018, CSG filed the AVC and a motion for an expanded temporary restraining order as a result of new information it discovered after the September 4 hearing. D.E. 19, 20. The Court granted Plaintiff's request in part, and on October 3, 2018, preliminarily enjoined the Individual Defendants from violating the non-solicitation provision of the Agreements.[3] D.E. 44. Shortly after, on October 24, 2018, Alliant and Ur filed answers to the AVC (D.E. 57, 58) along with their motion for judgment on the pleadings (D.E. 59); the remaining Defendants filed their motion to dismiss pursuant to Rule 12(b)(6) (D.E. 56).[4]

## II.   LEGAL STANDARDS

### 1. Motion to Dismiss Standard

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of

---

[3] Defendants appealed the October 3 Order that preliminary enjoined the Individual Defendants. D.E. 46. On June 4, 2019, the Third Circuit vacated the October 3 Order and remanded the matter to this Court for further proceedings. D.E. 82.

[4] On July 26, 2019, Defendants filed a motion to stay discovery pending a decision on the motion to dismiss and motion for judgment on the pleadings. D.E. 88. Although the motion to stay is not fully briefed, this Opinion and Order renders Defendants' motion to stay moot.

the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### 2. Motion for Judgment on the Pleadings Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pleadings are "closed" after the complaint and answer are filed. *Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). A Rule 12(c) motion based on the defense that Plaintiff fails to state a claim is governed by the same standard that applies to a motion to dismiss under Rule 12(b)(6). *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Consequently, the Court will consider both motions together.

### III.   ANALYSIS

Defendants seek to dismiss (1) Count One - Plaintiff's claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016 (the "DTSA")[5]; and (2) Count Two –

---

[5] The DTSA provides a private right of action to certain owners of trade secrets and vests federal district courts with original jurisdiction over civil claims brought under the Act. 18 U.S.C. § 1836(b), (c). The Court's federal question jurisdiction over this matter is premised on Plaintiff's

Plaintiff's claim for misappropriation of trade secrets under the New Jersey Trade Secrets Act (the

"NJTSA"). Both the DTSA and the NJTSA require a plaintiff "to demonstrate (1) the existence

of a trade secret, defined broadly as information with independent economic value that the owner

has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as

the knowing improper acquisition and use or disclosure of the secret."[6] *Par Pharm., Inc. v. QuVa*

*Pharm, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019). Courts in this district "fold" the DTSA analysis

into the NJTSA review. *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421,

at *4 (D.N.J. July 16, 2018). Therefore, this Court will consider the claims together.

### 1. Applicability of the NJTSA

Defendants argue that the NJTSA claims should be dismissed because Plaintiff fails to

allege that the Act applies to Defendants. Specifically, Defendants argue that the Individual

Defendants worked for CSG in New York, went to work for Alliant in New York, and live in New

York. 12(b)(6) Br. at 19-20. "In determining the choice of law for trade secret cases, the place of

alleged misappropriation is controlling." *Quintiles IMS Inc. v. Veeva Sys. Inc.*, No. 17-00177,

2017 WL 4842377, at *5 (D.N.J. Oct. 26, 2017). Although Defendants argue that the alleged

wrongful conduct only occurred in New York, this is not apparent from the facts as alleged in the

---

DTSA claim. AVC ¶ 35. Thus, if the DTSA claim is dismissed in its entirety, this Court would
no longer have jurisdiction over the matter as the parties are not completely diverse.

[6] Misappropriation is defined under the DTSA as "acquisition of a trade secret of another by a
person who knows or has reason to know that the trade secret was acquired by improper means;"
or "disclosure or use of a trade secret of another without express or implied consent by a person
who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade
secret was derived from or through a person who had used improper means to acquire the trade
secret." 18 U.S.C. § 1839(5). Improper means includes "theft, bribery, misrepresentation, breach
or inducement of a duty to maintain secrecy, or espionage through electronic or other means." 18
U.S.C. § 1839(6). The NJTSA contains virtually identical definitions of misappropriation and
improper means. N.J.S.A. 56:15-2.

AVC. CSG pleads that its principal place of business in New Jersey (AVC ¶ 22); Ur lived in New

Jersey (*id.* ¶ 28) and Alliant has offices in New Jersey (*id.* ¶ 33). As a result, based on the limited

information available at this stage of the proceedings, the Court cannot conclude as a matter of law

that the NJTSA does not apply. *See Quintiles IMS Inc.*, 2017 WL 4842377, at *4 (refusing to

dismiss claims based on choice-of-law argument because discovery was necessary to determine

location of alleged wrongful conduct).[7]

The Court does not dismiss the NJTSA claims as to any Defendant on these grounds.

### 2. Trade Secrets

CSG identifies the trade secrets at issue as customer lists, an "opportunity list," and other

proprietary business information. AVC ¶¶ 100, 126-33. Customer lists, pricing information, and

marketing techniques constitute trade secrets under New Jersey law and the DTSA. *IDT Corp. v.*

*Unlimited Recharge, Inc.*, No. 11-4992, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012); *Von*

*Rohr Equip. Corp. v. Modern Fasteners Inc.*, No. 16-6675, 2017 WL 9690975, at *1 (D.N.J. May

18, 2017).

Defendants argue that Plaintiff's trade secrets claims fail because CSG does not identify

the asserted trade secrets with enough specificity. *See* 12(b)(6) Br. at 14-15. The cases that

---

[7] In addition, the Agreements contain a New Jersey choice-of-law provision that provides "[t]his Agreement shall be governed by, construed and enforced and the legality and validity of each term and condition shall be determined in accordance with the . . . laws of the State of New Jersey." *See, e.g.*, AVC Ex. A, ¶ 6. To resolve a choice-of-law argument, this Court applies the choice-of-law rules of New Jersey, the state in which the Court sits. *Demmick v. Cellco Partnership*, No. 06-2163, 2010 WL 3636216, at *3 (D.N.J. Sept. 8, 2010). In analyzing similar choice-of-law provisions, courts in New Jersey have determined that the language should be broadly construed such that the choice-of-law provisions encompasses tort claims that stem from the agreement. *See, e.g.*, *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2008 WL 5218267, at *5-6 (D.N.J. Dec. 11, 2008) (stating that choice-of-law clause that used the words "governed and construed by" should be interpreted broadly). Thus, while this issue was not initially raised by Defendants and was only briefed in passing by the parties, it appears that the NJTSA also applies to the Individual Defendants by virtue of their Agreements.

Defendant relies on in making this argument, however, are distinguishable. In *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-557906, 2018 WL 557906, at *5 (S.D.N.Y. Jan. 23, 2018), the court dismissed the trade secrets claim because the plaintiff only listed "nine extraordinarily general categories" to demonstrate the existence of trade secrets. Similarly, in *Oakwood Laboratories, LLC v. Thanoo*, No. 17-5090, 2017 WL 5762393, at *4 (D.N.J. Nov. 28, 2017), the court determined that the plaintiff failed to sufficiently plead that trade secrets existed because it "never identifie[d] or point[ed] to a specific action, process, or formula" that might be protectable. Here, Plaintiff sufficiently identifies the alleged trade secrets at issue. CSG specifically names and describes documents that Andrews accessed the day before he resigned from CSG (*see* AVC ¶ 100) and that Ur emailed to herself prior to her resignation (*see id.* ¶¶ 126-33).

Defendants also maintain that CSG has not taken appropriate steps to keep the information at issue secret. *See* 12(b)(6) Br. at 17. To constitute a protectable trade secret under the DTSA and the NJTSA, a plaintiff is required to take "reasonable measures to keep such information safe." 18 U.S.C. § 1839(3)(A); *see also* N.J.S.A. 56:15-2. CSG plausibly alleges that it took reasonable measures here. CSG required that each Individual Defendant signed the Agreements at issue. The respective Agreements acknowledge that the Individual Defendants will have access to confidential information such as "clients, prospective clients, pricing information, and strategies." AVC ¶ 63 (internal punctuation omitted). As a result, through their respective Agreements, the Individual Defendants agreed to "keep secret all Confidential Information of the Company . . . and will not make use of, divulge or otherwise disclose Confidential Information, directly or indirectly, to anyone outside of [the] Company." *Id.* ¶ 64. The Individual Defendants also agreed to return all confidential information to CSG after their employment ended. *Id.* ¶ 65. In addition, CSG provided its employees, including the Individual Defendants, with an employee handbook. The

employee handbook contains a "Company Property policy," which states that certain information, including CSG's business and marketing plans, are confidential and valuable trade secrets and that this information should not be communicated to any third party except when performing job duties for CSG. *Id.* ¶¶ 70-72. The "Confidential and Proprietary Information policy" in the employee handbook advises employees that they have a "duty to protect and manage Confidential Information," which includes customer and prospective customer lists. *Id.* ¶¶ 73-74. CSG employees are advised that they have a duty to protect this information even after their employment with CSG ends. *Id.* ¶ 75. Finally, CSG has a Corporate Data Storage Policy, "which prohibits the use of public cloud storage, such as Dropbox" and the company "keeps its confidential information on password protected servers and devices which can only be accessed using appropriate credentials." *Id.* ¶¶ 76, 78.

Courts in this circuit have determined that similar safeguards constitute "reasonable measures" under federal and New Jersey law. *See, e.g., Par Pharm. Inc.*, 764 F. App'x at 278 (concluding that use of non-disclosure agreements and "appropriate facility security measures" were reasonable steps to protect manufacturing procedures under the DTSA and the NJTSA); *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 04-3623, 2011 WL 3651331, at *3, *16 (D.N.J. Aug. 18, 2011) (use of license agreements, non-disclosures, and confidentiality agreements for end-users; a firewall; and confidentiality legends on printed materials were reasonable measures to protect proprietary software under New Jersey law).

Defendants further argue that these safeguards are not enough because CSG took the same steps to protect its confidential information as it did for trade secrets. Thus, Defendants appear to argue that CSG was required to incorporate additional safeguards, beyond its protections for other confidential information. The Court disagrees, and Defendants have not cited controlling authority

to support their assertion. Neither the DTSA nor the NJTSA require parties to take extraordinary measures to protect information; reasonable safeguards are appropriate. 18 U.S.C. § 1839(3)(A); N.J.S.A. 56:15-2. And again, courts in this circuit have determined that similar measures were appropriate safeguards under state and federal law.

In sum, the Court concludes that Plaintiff pleads sufficient facts in the AVC to plausibly establish that it had protectable trade secrets.

### 3. Misappropriation of Trade Secrets

Defendants contend that CSG fails to plead that any Defendants misappropriated CSG's trade secrets. At the outset, the Court notes that at the motion to dismiss stage, a plaintiff is not required to make specific allegations regarding a defendant's use or disclosure of trade secret to state a *prima facie* misappropriation of trade secrets claim. *See Chubb INA Holdings Inc. v. Chang*, No. 16-2354, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017).

Here, Plaintiff pleads that a forensic analysis of Andrews' computer revealed that the day before Andrews resigned from CSG he accessed, and "upon information and belief," copied a client list, a confidential Consulting Service Agreement between CSG and a client, and an "Opportunity List." AVC ¶ 100. CSG also alleges that shortly before her resignation from CSG, Ur forwarded over 150 emails, some with attached documents, from her company-provided email address to her personal email address. While not an exhaustive list, Ur emailed herself (1) a list of talking point with service ideas tailored to a large CSG client; (2) a spreadsheet showing how to perform income calculations for clients; (3) a confidential client list with pricing requirements and other customer specific information; and (4) a proprietary evaluation and assessment tool that models whether a client is subject to certain taxes under the Affordable Care Act. *Id.* ¶¶ 126-33.

CSG further pleads that Andrews and Ur have used or will use this information to unfairly compete with CSG, and that Alliant now possesses or will inevitably possess this information. *Id.* ¶¶ 102-03; 134-35. Moreover, CSG pleads that on numerous occasions, the Individual Defendants have discussed specific CSG clients with Daniel McCaffrey, an Alliant employee, before McCaffrey called or met with the CSG client. *Id.* ¶¶ 193-215. CSG avers that, upon and information and belief, the Individual Defendants disclosed confidential and proprietary CSG customer information to Alliant during these conversations.[8] *Id.* ¶ 229. CSG also alleges that Alliant is strategically trying to collect CSG's business information. *Id.* ¶ 217. In fact, since the Individual Employees left CSG and joined Alliant, five CSG clients have terminated their relationship with CSG and moved their business to Alliant. *Id.* ¶ 216. Finally, as early as July 16, 2018, Alliant was on notice that Andrews was subject to a non-solicitation and confidentiality agreement with CSG.[9] *Id.* ¶ 118.

Plaintiff's allegations are sufficient to state a claim under the DTSA and the NJTSA. *See, e.g., Chubb INA Holdings Inc.*, 2017 WL 499682, at *10 (concluding that allegations that former employees of Plaintiff intentionally misappropriated and disclosed trade secrets and/or

---

[8] A plaintiff may plead facts upon information and belief "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control – so long as there are no boilerplate and conclusory allegations and plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)) (internal punctuation omitted). In this instance, the timing of the Individual Defendants' departures from CSG, the information of Plaintiff accessed by certain Individual Defendants, the numerous allegations regarding the Individual Defendants' conversations about CSG clients with McCaffrey, and the fact that CSG clients have terminated their relationships with CSG since the Individual Defendants left CSG are sufficient to make the "upon information and belief" assertions plausible.

[9] Andrews was the first of the Individual Defendants to leave CSG to work for Alliant. Andrews resigned on July 2, 2018 (AVC ¶ 104) and CSG alleges that the remaining Individual Defendants abruptly resigned within weeks to join Andrews at Alliant (*id.* ¶ 111).

confidential information of Plaintiff and upon information or belief "inevitably will use or disclose" the confidential information to their new employer were sufficient to state a claim under the DTSA); *IDT Corp.*, 2012 WL 4050298, at *7 (stating that allegations that the individual employee defendants had access to confidential information as former employees and consultants, and that these defendants used the confidential information for the benefit of their new employer were sufficient to state a claim under the NJTSA).

Defendants argue that Plaintiff's claims fail because the AVC does not set forth specific facts as to any Defendants' purported misappropriations. *See, e.g.*, 12(b)(6) Br. at 5. As for Andrews and Ur, Plaintiff pleads specific facts regarding information that they accessed and when they accessed the information. These allegations are more than sufficient to plead a *prima facie* claim. Defendants counter that Plaintiff's claims fail, at least as to Alliant, because in Alliant's answer, it states that a third-party forensic expert identified and permanently deleted all CSG-related information from Andrews and Ur's personal devices prior to their joining Alliant. *See, e.g.*, Alliant Ans. ¶¶ 12, 102. "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221 (quoting *Jablonski*, 863 F.2d at 290-91). The Court cannot conclude as a matter of law that Alliant prevails based on its factual assertions. Even if the Court were to accept Alliant's representations, deleting CSG materials from Andrews and Ur's personal devices does not take away from the fact that CSG is alleging that Andrews and Ur improperly accessed this information in the first place, and, more importantly, does not mean that the information was not shared with Alliant before it was deleted. As a result, the motion for judgment on the pleadings is denied.

As to all Defendants, as noted, misappropriation includes the disclosure of a trade secret. 18 U.S.C. § 1839(5); N.J.S.A. 56:15-2. Here, CSG alleges that "Andrews, Diggs, Duffy and Ur all discussed CSG clients with Alliant. Upon information and belief, the information they disclosed in such conversations was confidential, proprietary, and contained company trade secrets." AVC ¶ 229. CSG also alleges that Alliant was aware of the Individual Defendants' Agreements and was actively trying to obtain CSG's business information. *Id.* ¶¶ 217-18. The Court concludes that Plaintiff's allegations are sufficient at the motion to dismiss stage as to all Defendants because CSG plausibly pleads that protected information was disclosed.

Defendants maintain that CSG only alleges that Defendants discussed confidential and proprietary information, rather than trade secrets. 12(b)(6) Br. at 5-6, 9. Defendants, however, cherry-pick paragraphs from the AVC to support this argument. Reading the AVC as a whole, CSG pleads that the Individual Defendants discussed protectable trade secrets with Alliant. CSG specifically identifies that the trade secrets at issue include customer lists and proprietary information that Andrews accessed prior to his resignations from CSG and that Ur emailed to herself, and that all of the Individual Defendants shared this information with McCaffrey. Moreover, CSG specifically pleads that the information the Individual Defendants disclosed during their conversations with McCaffrey "was confidential, proprietary, and *contained company trade secrets.*" AVC ¶ 229.

Next, Defendants contend that CSG's trade secrets claims fail because Plaintiff does not sufficiently plead that Alliant used the trade secrets. Specifically, Defendants argue that Plaintiff does not satisfy the requirements of the inevitable disclosure doctrine. *See, e.g.,* 12(b)(6) Br. at 7. If a plaintiff cannot allege actual use of trade secrets, New Jersey law permits a party to rely on

the inevitable disclosure doctrine.[10] *Osteotech, Inc. v. Biologic, LLC*, No. 07-1296, 2008 WL 686318, at *3 (D.N.J. Mar. 7, 2008). But CSG plausibly alleges that its trade secrets were used when the Individual Defendants discussed CSG clients in advance of McCaffrey's meetings and phone calls with these clients. *See, e.g.*, AVC ¶ 198. Critically, CSG alleges that it has already lost clients to Alliant. *Id.* ¶ 216. Accordingly, Plaintiff plausibly plead facts that support the inference that CSG's trade secrets were used and that CSG has been harmed by the disclosure. *See Chubb INA Holdings Inc.*, 2017 WL 499682, at *9.[11]

In sum, Plaintiff plausibly pleads *prima facie* claims for misappropriation of trade secrets as to each of the Defendants under the DTSA and the NJTSA.

## IV. CONCLUSION

For the foregoing reason and for good cause shown,

IT IS on this August 12, 2019

**ORDERED** that Defendants' motion to dismiss and for judgment on the pleadings (D.E. 56, 59) are **DENIED**; and it is further

**ORDERED** that Defendants' motion to stay (D.E. 88) is **DENIED AS MOOT**.

_____
John Michael Vazquez, U.S.D.J.

---

[10] Under the inevitable disclosure doctrine, "an employer need not establish that its former employee has actually used or disclosed trade secrets. Rather, an employer may demonstrate that 'there is a sufficient likelihood of "inevitable disclosure" of its trade secrets to a competitor.'" *Osteotech, Inc. v. Biologic, LLC*, No. 07-1296, 2008 WL 686318, at *3 (D.N.J. Mar. 7, 2008) (quoting *Fluoramics, Inc. v. Trueba*, No. BER-C-408-5, 2005 WL 3455185, at *8 (N.J. Ch. Div. Dec. 16, 2005)).

[11] Because the Court concludes that Plaintiff states a DTSA and NJTSA claim as to each Defendant, the Court will not address Defendants' remaining arguments as to dismissal.